Entered on Docket
December 14, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: December 11, 2009**



_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 08-32240 TEC |
| CRISTINA RAMOS REQUILMAN, | Chapter 7 |
| Debtor. | |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-7, Asset Backed Certificates, TMTS Series 2006-7, | Adv. Proc. No. 09-3011 TC |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION** |
| CRISTINA RAMOS REQUILMAN, and E. LYNN SCHOENMANN, Chapter 7 Trustee, | |
| Defendants. | |
| E. LYNN SCHOENMANN, Chapter 7 Trustee, | |
| Counter-Claimant, | |
| vs. | |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee on behalf of the holders of the Terwin Mortgage Trustee 2006-7, Asset Backed Certificates, TMTS Series 20066-7, | |
| Counter-Defendant. | |

MEMORANDUM DECISION                    -1-

The court conducted a trial in this action on October 27, 2009. Michael St. James and Daniel J. Mulligan appeared for chapter 7 trustee E. Lynn Schoenmann (Trustee). Timothy M. Ryan appeared for U.S. Bank National Association (the Bank). Upon due consideration, and for the reasons set forth below, which shall constitute the court's findings of fact and conclusions of law, I determine that while Trustee is entitled to rescind the loan transaction at issue on the condition that Trustee tender to the Bank the money advanced by the Bank, Trustee should be afforded no relief in this action because Trustee is unable to make the required tender within a reasonable period of time.

FACTS

Cristina and Eugene Requilman own a single-family residence at 21 Portola Avenue, Daly City, California (the Residence). On April 5, 2006, they refinanced the Residence by taking out two loans against the property. The first of these loans was in the amount of $568,000 and was secured by a first deed of trust against the Residence (the Senior Loan). The second of these loans was secured by a second deed of trust against the Residence and currently has a balance of approximately $142,000 (the Junior Loan). Both the Senior Loan and the Junior Loan are currently held by the Bank.

Cristina Requilman (Debtor) filed a petition under Chapter 7 of the Bankruptcy Code on November 21, 2008. E. Lynn Schoenmann is the trustee duly appointed in that case.

On December 19, 2008, the Bank filed a notice for relief from stay seeking the right to foreclose upon the Senior Loan.

On January 9, 2009, Trustee mailed to the Bank a notice of rescission regarding the Senior Loan under the Federal Truth in

MEMORANDUM DECISION         -2-

Lending Act (TILA). In the notice of rescission, Trustee asserted that Debtor was not provided two copies of a Notice of Right to Cancel properly completed to indicate the last date upon which that right could be exercised, as required by TILA.

On January 2, 2009, Trustee filed opposition to the Bank's motion for relief from stay, contending that such relief from stay was inappropriate because Trustee had rescinded the Senior Loan under TILA.

At the January 12, 2009 hearing on the Bank's motion for relief from stay, the Bank denied that a TILA violation had occurred. The court directed the Bank to file an adversary proceeding contesting the validity of the Trustee's notice of rescission, and denied the motion for relief from stay pending the outcome of that proceeding.

On January 29, 2009, the Bank filed the present action. Attached to the complaint is a copy of a receipt signed by Debtor acknowledging that she was provided two copies of a properly completed Notice of Right to Cancel regarding the Senior Loan. Trustee filed an answer and counterclaim, alleging that Debtor had not received two copies of a properly completed Notice of Right to Cancel regarding the Senior Loan.[1]

Upon consideration of the evidence received at trial, I find that Debtor did not receive two copies of the Notice of Right to Cancel, properly completed to indicate the last date on which Debtor could exercise that right. Debtor testified that she preserved in one file all the papers she received regarding the Senior Loan. I credit that testimony. The file contained two copies of a Notice of Right to Cancel not completed to indicate the last date upon which

---

[1] Trustee does not contend that the Bank committed any TILA violation regarding the Junior Loan.

that right could be exercised.  The file appeared to be complete in that it included a large number of documents from the closing, including approximately 40 notices, disclosures, certifications, acknowledgments, riders, and the like, in addition to the note and deed of trust.  The only evidence suggesting that Debtor had received copies of a properly completed Notice of Right to Cancel was the receipt that Debtor signed.  Taken together, these circumstances indicate to the court that the Bank provided Debtor with two uncompleted copies of the Notice of Right to Cancel, that the Bank did prepare a properly completed version of the Notice, that the Bank showed the properly completed Notice to Debtor at the closing, but that the officer executing the closing somehow forgot to provide Debtor two copies of the properly completed Notice regarding the Senior Loan.

Just before trial, Trustee indicated her intent to expand the factual inquiry beyond the question whether Debtor received copies of a properly completed Notice of Right to Cancel, stating in her trial brief that the Senior Loan "is symptomatic of the predatory lending practices which caused the sub-prime meltdown: loans to borrowers who could not realistically afford to repay them."  The Bank objected to the introduction of any such evidence on the basis that Trustee had not alleged any such facts in her answer and counterclaim, that Trustee had not identified any such evidence in her Rule 26 disclosures, and that Trustee had not indicated her intent to introduce any such evidence in the Joint Pretrial Statement filed by the parties only three weeks before trial.  The court sustained the Bank's objection and barred introduction of the evidence in question, finding that the introduction of previously

undisclosed evidence would be unduly prejudicial to the Bank.

DISCUSSION

The parties agree on the following points of law. That the Senior Loan was subject to TILA. That in a loan transaction subject to TILA, the borrower is afforded a three-day cooling-off period after signing the note, during which the borrower may cancel the loan. That the borrower must be provided with two copies of a Notice of Right to Cancel, explaining the right to cancel and how that right can be exercised. That the copies of the Notice of Right to Cancel provided to the borrower must indicate the last date upon which borrower can exercise the right to cancel. That if the copies of Notice of Right to Cancel provided the borrower are not completed to indicate the last date upon which the loan can be cancelled, the borrower may exercise the right to cancel at any time within three years of the making of the loan. That upon receipt of timely notice of rescission (cancellation) of the loan, the lender is obligated to cancel the security agreement. That upon the lender's cancellation of the security agreement, the borrower is required to tender to the lender the amount received from the lender, minus the amount of any interest and fees paid to the lender (hereinafter the Net Loan Proceeds). That in appropriate circumstances, a court may require the borrower to tender the Net Loan Proceeds before the lender is required to cancel the security agreement. That in a chapter 7 case, the trustee may exercise any right to cancel that the debtor had on the petition date.

The principal dispute between the parties in the present case is whether the court should require Trustee to tender the Net Loan Proceeds in cash before Bank is required to cancel the deed of trust

**MEMORANDUM DECISION** -5-

securing the Senior Loan.

The law governing this question is set forth in section 226.23 of Regulation Z of the Federal Reserve Board, which provides:

> (d) Effects of rescission.
>
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor....
>
> (4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. § 226.23.

In determining whether to modify the normal sequence of events to require prior tender of the Net Loan Proceeds, a court should keep in mind that the objective of rescission under TILA is to restore the parties to the *status quo ante*--to put each party in the position that it enjoyed before the loan was made. <u>Wepsic v. Josephson (In re Wepsic)</u>, 231 B.R. 768, 775-76 (Bankr. S.D. Cal. 1998). To this end, the Ninth Circuit has held that a court may condition rescission upon prior tender of the Net Loan Proceeds, where the TILA violation giving rise to the right to rescind is not egregious, and where the lender would otherwise be left with an unsecured claim in the borrower's bankruptcy.

> As we explained, whether a decree of rescission should be conditional depends upon "the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the

**MEMORANDUM DECISION**           -6-

> Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act." Indeed, in LaGrone we held that rescission *should be* conditioned on repayment of the amounts advanced by the lender. We noted that the TILA violations there were not egregious (failure to disclose an acceleration clause and amount financed in the broker's statement, and to delineate additional data from mandatory data), and that the equities favored the creditor who would otherwise have been left in an unsecured position in the borrower's intervening bankruptcy.

Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003) (emphasis in original)(citations omitted).

The facts and circumstances of the present case indicate that this court should exercise its discretion to require prior tender of the Net Loan Balance as a condition of rescission.

First, the TILA violation was not egregious. Debtor was provided two copies of the Notice of Right to Cancel. Those copies provided Debtor the following information regarding her right to cancel the loan.

> You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:
> 1. the date of the transaction, which is _____
> 2. the date you receive your Truth in Lending disclosures; or
> 3. the date you receive this notice of your right to cancel.
> ...
> You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

The copies of the Notice of Right to Cancel were deficient only in that they did not indicate the specific date on which the right to cancel would expire, as required by the statute. At the loan closing, Debtor was also shown a copy of the Notice of Right to Cancel on which the last date for cancellation was properly

MEMORANDUM DECISION          -7-

completed, and acknowledged in writing receipt of the completed form. These circumstances indicate that the Bank's violation of TILA was neither extensive nor intentional, and that Debtor received very substantial notice of the right to cancel and when that right would expire.

Second, if this court does not require prior tender as a condition of rescission, and the Bank is left with only a general unsecured claim, the Bank would be deprived of its statutory right to return of the $464,000 Net Loan Proceeds. It is undisputed that the bankruptcy estate has no assets other than the Residence. Under the most optimistic scenario suggested by Trustee at trial, a sale of the Residence would yield about $513,000 after costs of sale.[2] If the Senior Loan was relegated to the status of a general unsecured claim, those sale proceeds would first be applied to pay the junior deed of trust (approximately $142,000) and the fees and other expenses of Trustee and her counsel, before the remainder was shared by the Bank and other unsecured creditors ($71,500 scheduled). It is clear that the Bank would not receive the full amount of the Net Loan Proceeds ($464,000) if its right to payment of that sum was relegated to the status of a general unsecured claim.

It is undisputed that Trustee is unable to tender the required sum immediately. The question thus arises whether she should be afforded additional time to do so. I conclude that a trustee ordinarily should be afforded a reasonable period of time to sell

---

[2] Trustee testified that she attempted to sell the Residence in February 2009, that the highest offer she received at the time was only $475,000, and that her broker advised her that the Residence has appreciated by fifteen percent since February. With such appreciation, net sales proceeds after costs of sale (6%) would be about $513,000. [$475,000 x 1.15 x .94 = $513,475].

**MEMORANDUM DECISION** -8-

the collateral.  This is so, because one of the effects of the
lender contesting the validity of rescission is that prior to a
court order confirming the validity of the rescission, a trustee can
convey good title only by paying the pre-rescission balance of the
secured note.  I also conclude, however, that a trustee should not
be afforded time to sell the property if it is clear that the
property cannot be sold within a reasonable period of time for a
price sufficient to make the required tender, or if it is clear that
a sale will provide no benefit to the estate.

In the present case, Trustee should not be afforded time to
sell the collateral, because the Residence does not have sufficient
value to pay the required tender and leave any unencumbered proceeds
for the estate.  The highest sale price Trustee can reasonably
expect to receive in the near future would yield about $513,000
after costs of sale.  While that sum would be sufficient to pay Bank
the required tender of $464,000, it would leave nothing for the
estate, because the Bank holds a second note secured by a junior
deed of trust, which Trustee acknowledges is fully enforceable under
nonbankruptcy law, and which has a current balance of approximately
$142,000.[3]

Trustee's counsel raised at trial the prospect that Trustee
could make the required tender in cash and still recover some money
for the benefit of unsecured creditors by voiding the junior deed of

---

[3] The Residence would have to sell for $642,000 to pay the required tender amount, the junior deed of trust, costs of sale, and return a surplus to the estate. [$464,000 (required tender) + $142,000 (junior trust deed) x 1.06 (costs of sale = $642,000 (necessary sale price)]  Such a price would represent a 35 percent increase in value in the nine months since the February 2009 offer, far greater than the 15 percent increase suggested by Trustee. [$642,000 (necessary sale price) divided by $475,000 (February 2009 offer) = 1.35 (35 percent increase in value)]

**MEMORANDUM DECISION**                -9-

trust under section 506(d). When Trustee tried to sell the
Residence in February 2009, the highest offer she received was only
$475,000. If the Residence were valued at that amount, the junior
deed of trust would be wholly unsecured, and any post-February 2009
appreciation would be unencumbered.

Trustee's scenario depends upon valuing the junior lien as of a
date other than the date of sale of the property. For the following
reasons, I decline to adopt such an approach.

First, such authority as there is states that "[i]f the
collateral is actually sold during the pendency of the case, the
determinative date [for valuation] should be the time of disposition
for the purposes of measuring entitlements to the proceeds of the
disposition." Takisaki v. Alpine Group, Inc. (In re Alpine Group,
Inc.), 151 B.R. 931, 935-36 (9th Cir. BAP 1993) (value of secured
claim determined by actual sales proceeds rather than petition
date). The date-of-sale approach is especially compelling in a
chapter 7 case, where sale of the property of the estate is the
trustee's normal course of action, and it is not necessary to value
collateral at an early date and without a sale to permit the
restructuring of liens against property that the debtor plans to
retain.

Second, a market transaction is always a more reliable measure
of value than a court determination, and should be employed absent
some strong reason to value the collateral in another manner. See
Romley v. Sun Ntl. Bank (In re Two "S" Corp.), 875 F.2d 240, 243
(9th Cir. 1989) (price paid at commercially reasonable sale is
better evidence of property's value than prior appraisals).

Third, and most important, employing a pre-sale valuation date

**MEMORANDUM DECISION**                          -10-

Case: 09-03011   Doc# 30   Filed: 12/11/09   Entered: 12/14/09 08:06:08   Page 10 of 14

to reduce the value of a lien before sale would undermine the protections afforded secured creditors in section 363(k), which permits a secured creditor to credit bid the allowed amount of its claim at any sale proposed by trustee. The purpose of section 363(k) is to provide a check upon the trustee's proposed sale price, by permitting the secured creditor to take the collateral if the proposed sale price would not pay the secured claim in full and the creditor believes it could do better. Cf. <u>In re Woodridge North Apts., Ltd.</u>, 71 B.R. 189, 191-92 (Bankr. N.D. Cal. 1987) (purpose of right to credit bid is to protect secured creditor against risk of undervaluation of collateral).

Trustee next argues that she should not be required to make the tender in cash, but should be permitted either to tender an unsecured claim in the bankruptcy case, or to tender the Residence to the Bank after the Bank returns to the estate in cash all interest and fees paid by Debtor. This argument is unpersuasive. It would be inappropriate to permit Trustee to tender an unsecured claim for the very reason the Ninth Circuit has upheld decisions altering the sequence for rescission: if tendered an unsecured claim, the Bank would not actually receive the Net Loan Proceeds, and the statutory goal of restoring the parties to the *status quo ante* would not be fulfilled. Trustee should also not be permitted to tender the Residence in-kind after receiving cash payment of all interest and fees paid by Debtor. First, Regulation Z expressly states that where the borrower has received *money*, then upon rescission, the borrower shall ordinarily return *money* to the lender.

> If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section.

**MEMORANDUM DECISION** -11-

Case: 09-03011   Doc# 30   Filed: 12/11/09   Entered: 12/14/09 08:06:08   Page 11 of 14

> When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value.

12 C.F.R. § 226.23 (d)(3).

Second, if the value of the Residence was insufficient to pay the full principal balance on the Senior Loan, the Bank would not be restored to the *status quo ante*. Wepsic, 231 B.R. at 775-76.

I determine that this court can deny rescission at any time it determines that the borrower cannot make the required tender. In Yamamoto, the Ninth Circuit upheld a decision in which the trial court denied rescission, without ever determining whether a TILA violation occurred, where the lender established that the borrower was unable to tender of the Net Loan Proceeds.

> [T]here is no reason why a court that may alter the sequence of procedures *after* deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds.

Yamamoto, 329 F.3d at 1173 (emphasis in original).

In the present case, Trustee is unable to make the required tender immediately. Trustee should not be afforded additional time to make the tender, because the Bank will be entitled to take all the proceeds from a sale of the Residence, whether or not the Senior Loan is rescinded. In this situation, it would be inequitable to continue to restrain the Bank from exercising its right to foreclose upon the Residence, when such restraint would provide no meaningful benefit to the bankruptcy estate or Debtor.

**MEMORANDUM DECISION** -12-

CONCLUSION

The Bank's violation of TILA was not egregious and Debtor is insolvent. As a result, Trustee should be required to tender the Net Loan Proceeds before the Senior Loan is rescinded. Trustee cannot make such a tender at this time. Trustee should not be afforded additional time to make the tender, because the sum of the required tender and the amount due on the Junior Loan substantially exceed the proceeds that could be obtained from a sale of the Residence. Accordingly, the court will enter a judgment in the present action denying enforcement of Trustee's notice of rescission, and will enter a separate order granting the Bank's pending motion for relief from stay.

**\*\*END OF MEMORANDUM DECISION\*\***

## Court Service List

Peter D. Manning, Esq.
Law Offices of Peter D. Manning
941 West Hedding Street
San Jose, CA 95126

Michael St. James, Esq.
St. James Law
155 Montgomery Street, Suite 1004
San Francisco, CA 94104

Les Zieve, Esq.
Law Offices of Les Zieve
17682 Beach Boulevard, Suite 204
Huntington Beach, CA 92647

Timothy M. Ryan, Esq.
The Ryan Firm
1100 N. Tustin Avenue, Suite 200
Anaheim, CA 92807

Daniel J. Mulligan, Esq.
Jenkins, Mulligan & Gabriel LLP
225 Bush Street, 16th Floor
San Francisco, CA 94104